## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael J. Ferola, #291941, ) | CIVIL ACTION NO. 9:13-2413-RBH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND** |
| William R. Byars, Jr., Gregory Knowlin, ) | **RECOMMENDATION** |
| Kenneth Sharp, Jerry Adger, ) | |
| Officer Fulton, and Michael Bowers, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C.§ 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment on June 6, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on June 10, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. Following several extensions of time to respond, as well as the granting in part of a motion to compel filed by the Plaintiff, Plaintiff filed a response in opposition to the Defendants' motion for summary judgment on August 4, 2014.

Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local



1

**Background and Evidence**

Plaintiff alleges[2] in his verified Complaint[3] that when he was transferred to the Turbeville Correctional Institution, "prison officials" refused to allow him to send legal documents to three inmates he was attempting to serve with a state tort assault claim he had filed in state circuit court (Ferola v. SCDC, CA No. 2011 CP 08-1613). Plaintiff alleges he filed a grievance (TCI 1005-11) concerning this complaint, which was denied at both Step 1 and Step 2 of the grievance process.[4] Plaintiff further alleges that on October 26, 2011 he mailed a letter to the Clerk in his state court case which "sat in the Turbeville mail room for (2) months before it was received by the court". Plaintiff alleges he also filed a grievance (TCI 0047-12) with respect to this incident.

---

Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]Pursuant to previous stipulations and Orders of this Court, the only claims still being asserted in this lawsuit are Plaintiff's claims for denial of access to the courts and deliberate indifference arising at the Turbeville Correctional Institution, as asserted against the Defendants William Byars (former SCDC Director), Jerry Adger (SCDC Investigator), Gregory Knowlin (Warden of Turbeville), Kenneth Sharp (Operations at Turbeville), and Officers Fulton and Michael Bowers (Corrections Officers at Turbeville). All remaining claims as well as any additional Defendants set forth and named in Plaintiff's original Complaint had been dismissed. See Court Docket Nos. 15, 47, 57.

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[4]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).



Plaintiff alleges that on May 18, 2011 he filed another state tort lawsuit naming inmate Shawn Johnson as a defendant (Ferola v. SCDC, et al., C.A. No. 11-CP-40-1329). Plaintiff alleges that he requested a current address from the "defendants" in order to serve Shawn Johnson with the complaint in that case, but that his request was denied by "prison officials" as well as by David Tatarsky, legal counsel for the SCDC.[5] Plaintiff alleges that in May 2012 (date not provided) he obtained a court order from the state circuit court requiring the defendants to provide him an address for Johnson, but by that time "Johnson no longer lived there and as of the filing of this complaint defendant Johnson still has not been served" in that case. Plaintiff also alleges that due to the "defendants" interfering with his mail, the state court never received Plaintiff's motion to compel or objection to the Defendants' request for summary judgment in C.A. No. 11-CP-08-1613, and that as a result state Circuit Judge "Harrington" dismissed the SCDC as a defendant in that case. Plaintiff alleges that on or about June 6, 2012, he filed a notice of appeal of the decision dismissing the SCDC as a party defendant in that state case and sent copies of his notice of appeal to the Clerk of Court and defendant's counsel, but that neither party ever received the notice. Plaintiff alleges that he then moved before the State Court of Appeals to be allowed to re-file his notice of appeal, but that the State Court of Appeals denied his request.

Plaintiff further alleges that on July 11, 2012, he and inmate Joseph Cannon got into a verbal altercation after Plaintiff had submitted information to the Associate Warden concerning Cannon's "illegal activities". Plaintiff alleges that Cannon, in the presence of Defendant Officer Fulton, threatened the Plaintiff ("I'll beat your ass"), but that Fulton took no corrective action.

---

[5]Tatarsky is not a named Defendant in this case.



Plaintiff alleges that Fulton's failure to take corrective action against Cannon for threatening the Plaintiff was in violation of SCDC policy, and was a "direct result of Plaintiff being assaulted". Specifically, Plaintiff alleges that while he was speaking with Cannon's roommate, Cannon entered the room and "struck Plaintiff in the face knocking Plaintiff into the wall". Plaintiff further alleges that during the ensuing struggle, Cannon struck him multiple times until he [Plaintiff] fell to the floor unconscious. Plaintiff alleges that during this altercation Fulton was "maybe (50) feet away", but that even though he called for help while the assault was taking place, Fulton did not get up to investigate what was going on. Plaintiff alleges (on information and belief) that Fulton was on the phone at her desk during the approximate five minute assault, and that he had complained to the Defendants Bowers and Sharp in the past about Fulton making personal phone calls while working.

Plaintiff also alleges that even though SCDC policy requires half hour security checks, Fulton "did none" and that he lay in his room from 11:00 a.m. until the 1:00 p.m. count. Plaintiff alleges that it was not until 1:00 p.m., when an inmate advised Fulton that Plaintiff was in his room and needed medical attention, that Bowers was summoned to the unit. Plaintiff thereafter was escorted to the medical unit, where he was found to have "facial contusions" and was diagnosed with a "head injury with concussion". Plaintiff alleges that he refused to tell investigators who assaulted him until he was removed from Turbeville, that he was placed in lockup by the Defendant Sharp pending an investigation and transfer, and that he was thereafter transferred to the Evans Correctional Institution on July 16, 2012, following which he identified Cannon as the inmate who had assaulted him.

Plaintiff alleges that he had provided information about contraband and illegal

4



activities at Turbeville to the Defendant Sharp (Associate Warden), which was released and was the direct cause of Plaintiff being assaulted.  Plaintiff also alleges that the failure of the Defendants to keep Plaintiff's information confidential as promised was a contributing factor to Plaintiff being assaulted by Cannon.

Plaintiff seeks monetary damages as well as unspecified injunctive relief for the alleged violations of his constitutional rights by the named Defendants.  <u>See</u> <u>generally</u>, <u>Plaintiff's Verified Complaint</u>.

In support of summary judgment in the case, the Defendant Genesie Fulton has submitted and affidavit wherein she attests that she was an employee of the SCDC working at the Turbeville Correctional Institution at all times relevant to the allegations of Plaintiff's Complaint. Fulton attests that she is unaware of any specific threats made to the Plaintiff by other inmates, and that Plaintiff never requested protective custody.  Fulton attests that on July 11, 2012, while making cell checks, she approached Plaintiff's cell and noticed his face was swollen and bruised as if he had been in a fight.  Fulton attests that when she asked Plaintiff what had happened, he replied "nothing Ms. Fulton, I am ok".  Fulton attests that she had previously led Plaintiff back into his cell at 12:35 p.m., and that his face was not bruised and swollen at that time.  Fulton attests that she contacted Lt. Bowers, and Plaintiff was escorted to medical.  Fulton attests that she believes the injury occurred when the inmates were returning from lunch to their rooms, and that it is her understanding that Plaintiff was seen by the medical department and sent by ambulance to the hospital, where he was examined and released.  <u>See</u> <u>generally</u>, <u>Fulton Affidavit</u>.

The Defendant Kenneth Sharp has also submitted an affidavit wherein he attests that he was



employed by the SCDC at all relevant times, that at no time was he ever informed of any specific threat against the Plaintiff from any other inmate, nor did Plaintiff ever request to be placed into protective custody, that he has no information regarding the attack on the Plaintiff on July 11, 2012 nor its aftermath, as this matter was handled by other officers, and that he knows of no evidence of any dereliction of duty by Officer Fulton.  See generally, Sharp Affidavit.

    The Defendant Gregory Knowlin has submitted an affidavit wherein he attests that the SCDC has a policy which prohibits inmate to inmate correspondence, although this prohibition may be waived on a case by case basis if relatives are being incarcerated at different institutions and both wardens approve.  Knowlin attests that the reason for this policy is to curb violence and prevent gang activity within institutions, and that it also serves to prevent a prisoner from directing unrest at another institution or area of his institution.  Knowlin attests that, for these same reasons, the SCDC does not provide inmates addresses of other inmates, as this information could be use to incite unrest as described hereinabove.  Knowlin attests that the Plaintiff was not prevented from serving process for his lawsuits, that he could have hired an outside process server or contacted someone to help him look up where various inmates were held (which is a matter of public information), and that as such he had alternative means of serving his civil suit and was not prohibited from doing so by these policies.  Finally, Knowlin attests that he is informed that Plaintiff was provided with the other inmate's address pursuant to a court order in his civil case, and that he therefore suffered no harm from these policies.  See generally, Knowlin Affidavit.

    The Defendants have also provided copies of the SCDC Offender Management System printouts for the Plaintiff with respect to the incident of July 11, 2012, which reflect that this



incident involved an inmate on inmate assault without weapon and resulted in "minor" injuries. The narrative report on the management system printout reflects that Plaintiff was discovered by Officer Fulton while she was performing her duties on the B-wing, and that when Fulton noticed Plaintiff's face was swollen and bruised and inquired what happened, Plaintiff stated "nothing and he was ok". The computer narrative further indicates that Plaintiff was escorted to medical by the Defendant Bowers, where he was examined by Dr. Paul Drago. Dr. Drago requested treatment by an outside facility, and Plaintiff was transported by EMS to the regional hospital, where he was examined and found to have sustained a "minor head injury and a concussion". The narrative further indicates that Plaintiff was thereafter returned to Turbeville and placed in the SMU due to "protective concerns", while B-wing was placed on lock down until further notice. <u>See</u> <u>generally</u>, Defendants' Exhibits.

In opposition to the Defendants' motion for summary judgment, Plaintiff has submitted a copy of his grievance (TCI-1005-11) wherein he complains that he had previously not been allowed to correspond with the inmates who are defendants in his state lawsuit while he was at the McDougal Correctional Institution, and that he was now (since his transfer to TCI) asking to be permitted to send legal mail to those inmates by TCI authorities. The Warden's response to this grievance states:

> Per SCDC Policy PS-10.08, Inmate Correspondence Privileges, inmates who want to initiate correspondence with another inmate will provide a written request using SCDC Form 19-11, Request to Staff Member to his Warden indicating the other inmate's name, inmate number (if known), and complete address. You must indicate the relationship of the other inmate or if the inmate is in a joint legal action; and provide proof that this type of correspondence is authorized per these procedures. Both affected Wardens must provide written approval for the inmates to correspond with one another. Based on this information, I consider this matter resolved.

<u>See</u> Plaintiff's Exhibit A.



Plaintiff has also provided a copy of an Incident Report concerning an incident that had occurred at the McDougal Correctional Institution involving one of the defendants in that state case, as well as a disciplinary report and hearing record from that institution where inmate Wilder was found guilty of striking the Plaintiff. See Plaintiff's Exhibits B and C.

Plaintiff has also provided affidavits from other inmates relating to the incident of July 11, 2012, when he was assaulted by Cannon. Plaintiff's Exhibits D and E. Inmate Gary Wirtz attests that he was a prisoner housed in the B-unit on that date, and that he observed Plaintiff and inmate Joseph Cannon in a verbal argument at Officer Fulton's desk where he heard Cannon threaten to "beat [Plaintiff's] ass" for calling him [Cannon] a snitch. Wirtz attests that this occurred in the presence of Officer Fulton, who was at her desk, and that approximately two hours later the unit was ordered to lock down when Plaintiff was assaulted. See generally, Wirtz Affidavit. Inmate Chris Jones has also submitted an affidavit wherein he relays these same facts, and that when Cannon made his threat to the Plaintiff, Fulton "made no attempt to intervene or separate said inmates". See generally, Jones Affidavit.

Plaintiff has also provided a copy of an SCDC Health Services Report wherein Plaintiff was referred to the hospital by Dr. Drago for a "head injury with concussion". See Plaintiff's Exhibit F. Plaintiff has also submitted copies of SCDC Health Services Medical Summaries for July 11, 2012, showing where Plaintiff was seen for an "assault". These summaries reflect that Plaintiff had "edema all over face left worse than right" as well as a left side hemorrhage and a nose injury, with a notation that he needed to be sent to the ER for a CT scan. The medical summaries further note that on Plaintiff's return from the hospital, he had been diagnosed with a head



injury with concussion and facial contusions. See Plaintiff's Exhibit H.

Finally, Plaintiff has submitted a "voluntary statement" from inmate Chris Thornton, wherein he states that he saw Plaintiff come out of his room around noon time, following which several inmates went into Plaintiff's room and then subsequently came out of his room. See Plaintiff's Exhibit I.

## Discussion

As noted, the Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).



**I.**

**(Defendants Byars)**

With respect to the Defendant Byars, as an employee of the Department of Corrections this Defendant is subject to suit for damages under § 1983 in his individual capacity, and for injunctive relief in his official capacity. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. at 71; <u>Hafer v. Melo</u>, 112 S.Ct. 358, 365 (1991); <u>Goodmon v. Rockefeller</u>, 947 F.2d 1186 (4th Cir. 1991); <u>Inmates v. Owens</u>, 561 F.2d 560 (4th Cir. 1977); <u>Golub v. Goodes</u>, No. 09-380, 2010 WL 3702614 at * 3 (S.D.Ind. Sept. 10, 2010)["[A] claim for injunctive relief cannot be brought against government employees in their individual capacities . . . because it is only in their official capacities that injunctive relief can be granted."]. However, although subject to suit, Plaintiff has failed to present sufficient evidence (or even allegations) to create a genuine issue of fact as to whether this Defendant violated his constitutional rights such as to subject this Defendant to any personal liability.

It is readily apparent that William Byars has been named as a party Defendant in this case for the sole reason that he was, during the relevant time period, Director of the SCDC. There are no allegations that he was involved in, or played any role in, the alleged constitutional deprivations set forth in the Complaint. The doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions; <u>Vinnage v. Gibbs</u>, 550 F.2d 926, 927-929, n. 1-2 (4th Cir. 1977); and therefore Byars may not be held liable for monetary damages for any improper conduct committed by employees of the Department. Rather, in order for Byars to be liable in this case, Plaintiff must have evidence to show specific wrongdoing on the part of this Defendant, such as that he had actual or constructive knowledge that his subordinates were engaging in unconstitutional



conduct, or there was some other affirmative causal link between Byars and the constitutional injuries allegedly suffered by the Plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); Monell v. Dep't. of Social Services, 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd. 526 F.2d 591 (4th Cir. 1975); Stubby v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992). Plaintiff has presented no such evidence, or even alleged as such.

Therefore, even if Plaintiff's claims for monetary damages against the remaining Defendants were to otherwise survive Defendants' motion for summary judgment, Byars is entitled to dismissal as a party Defendant in his individual capacity.

## II.

### (Access to Court Claim)

In order to survive summary judgment on his access to courts claim, Plaintiff must have evidence sufficient to give rise to a genuine issue of fact as to whether he suffered harm in any court action he had pending due to improper conduct of a named Defendant. Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]. Defendants argue that, with respect to the period of time Plaintiff was at Turbeville, even if the Defendants did not provide Plaintiff with the locations of other inmates in order for Plaintiff to serve them with process in his state case,[6] both Plaintiff's and Defendants' evidence shows that Plaintiff

---

[6]Defendants assert that the prison policy at issue, prohibiting inmates from having access to this type of information, is supported by legitimate penological interests, all as is set forth in Defendants' evidence, and that there is therefore nothing per se unconstitutional about the policy itself. The undersigned agrees. Turner v. Safley, 482 U.S. 78, 89 (1987) ["...when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penalogical interests"]; White v. White, 886 F.2d 721, 723 (4th Cir. 1999)["Reasonable



did ultimately obtain the necessary information to serve these inmates pursuant to a court order, and therefore suffered no harm.  See Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].  However, Plaintiff alleges in his verified Complaint that by the time he obtained this court order in May or June 2012, the state defendant he was trying to locate (Shawn Johnson) no longer lived at the address he was provided, and that as of the filing of this action this defendant had still not been served (state case No. 2011-CP-40-1329).  Plaintiff also alleges that he mailed a letter to the Clerk in case No. 2011-CP-08-1613 "which sat in the Turbeville mail room for (2) months before it was received by the court", and that as a result of the "defendants" interfering with Plaintiff's mail the court never received a motion to compel or Plaintiff's objections to the defendants request for summary judgment, resulting in the state court dismissing the SCDC as a defendant in that case.  Finally, Plaintiff also alleges that when he filed a notice of appeal of this decision, that neither the court or defendant's counsel ever receive the notice of his appeal, and that after he discovered his notice of appeal had not been received and asked to be allowed to re-file the notice of appeal, the

---

regulations are necessary to balance the rights of prisoners with budgetary considerations"]; Couch v. Jabe, No. 11-34, 2012 WL 3043105 at * 7 (W.D.Va. July 25, 2012)["Prison officials undoubtedly have the right to screen mail entering a correctional facility to prevent the introduction of items that undermine security, good order, discipline, or rehabilitation."]; Parkhurst v. Ruettgers, No. 92-8018, 1992 WL 219042 at * 1 (10th Cir. Sept. 10, 1992["The withholding of identification material . . . is reasonably related to legitimate prison goals, including but not limited to the discouragement of escape."].  Therefore, to the extent Byars, , as Director of the SCDC, would be deemed responsible for the approval of this policy, he would be entitled to summary judgment as a party Defendant in his official capacity to the extent Plaintiff seeks injunctive relief to prohibit the general implementation or enforcement of the policy itself.  Rather, the issue before the Court is instead the question of whether any other Defendants' actions, in individually applying this policy to the Plaintiff the way they did under the particular facts of this case, deprived Plaintiff of his constitutional right of access to the courts.

12



court denied his request. See Plaintiff's Verified Complaint, ¶ ¶ 4, 9, 11-13, 31-38.

Other than Plaintiff's verified statements, which are considered as affidavit statements based on Plaintiff's personal knowledge; Williams, 952 F.2d at 823; no other evidence of a documentary or testimonial nature has been submitted with respect to Plaintiff's state lawsuits or to show what happened with respect to his filings and requests.[7] Considered in the light most favorable to the Plaintiff, the undersigned cannot find that the Defendants are entitled to summary judgment on Plaintiff's access to court claim when the only evidence before the Court are Plaintiff's sworn statements as to what happened and the adverse results he suffered. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) [Summary judgment not appropriate where sworn statements present version of the facts which require credibility determinations]; Mann v. Failey, No. 13-6446, 2014 WL 3511878, at * 7 (4th Cir. July 17, 2014) [where prisoner files the necessary briefs, affidavits, and corroborative evidence to support his claims, disputes of credibility are reserved for a fact finder].

Finally, while Plaintiff only references the "defendants" in these allegations, he does allege (and the Plaintiff's evidence confirms) that the Defendant Knowlin (Warden of the Institution) was aware of Plaintiff's request to serve the inmates at issue, while the Defendant Sharp is alleged to be a Major at Turbeville and legally responsible for overseeing the operation of that institution. Therefore, granting Plaintiff's pleadings the liberal construction to which he is entitled as a pro se litigant, these two Defendants could possibly be liable for the harm Plaintiff complains of. However,

---

[7]In his affidavit, Knowlin only defends the reasons for the existence of the "no contact" policy itself. He does not discuss why the Defendants did not themselves forward Plaintiff's service documents for him, nor does Knowlin discuss Plaintiff's other court filing claims, dispute that Plaintiff's legal filings were not provided to state court officials, or otherwise provide any evidence about what happened in Plaintiff's state cases. See also, Plaintiff's Exhibit A.

13



Plaintiff has made no allegations in his Complaint to connect the Defendants Adger, Fulton or Bowers to this claim, and therefore those three Officers should be dismissed as party Defendants from this Cause of Action.

### III.

### (Conditions of Confinement Claim)

Plaintiff's remaining claim concerns the assault he suffered at the hands of inmate Cannon. Plaintiff asserts that he was subjected to this assault because confidential information he provided prison authorities had become public knowledge, and that the Defendants failed to protect him.

With respect to this claim, in order for any named Defendant to be liable for a violation of Plaintiff's constitutional rights, Plaintiff must have evidence sufficient to give rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to a specific known ristk of harm to the Plaintiff. See Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. Jul. 7, 2003)[Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety]. Pursuant to this standard, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw the inference". Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The "deliberate indifference" standard is a "very high standard - a showing of mere



negligence will not meet it". Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). The Supreme Court has held that a plaintiff can make a prima facie case of deliberate indifference by showing "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it". Farmer, 511 U. S. at 842. Here, Plaintiff attests in his verified Complaint that he had submitted information to the associate warden at Turbeville[8] about allegedly illegal activities being engaged in by inmate Cannon, and that subsequently on July 11, 2012 Cannon, in the presence of the Defendant Fulton, threatened the Plaintiff and stated that he was going to "beat [his] ass". Plaintiff has also submitted affidavits from several fellow inmates who confirm that Cannon threatened the Plaintiff in Fulton's presence, but that Fulton took no corrective action. Plaintiff alleges that he was shortly thereafter assaulted by Cannon in his cell, suffering serious injuries as a result. Plaintiff alleges that Fulton was the officer on duty at the time, "was maybe (50) feet away", but that notwithstanding the altercation taking place and (according to the Plaintiff) Plaintiff calling for help while the assault took place, Fulton never got up to investigate the numerous inmates gathering outside of his cell during the assault, or the noise being made. Plaintiff alleges that the assault lasted approximately five minutes, during which Plaintiff believes Fulton was on the phone on a personal call.[9]

Plaintiff contends that the information he provided to the Defendant Sharp about

---

[8]This individual is later identified to be the Defendant Sharp who is elsewhere identified as a Major.

[9]Plaintiff alleges that he has complained in the past to the Defendants Bowers and Sharp about Fulton making personal calls while at work.

15



contraband and illegal activities taking place at Turbeville was released and not kept confidential as promised, although he has provided no evidence to show that, and that Plaintiff being assaulted by Cannon was a direct result of this alleged failure to keep this information confidential. Plaintiff further alleges that a failure by the Defendants Sharp, Knowlin and Bowers to act on complaints or take appropriate disciplinary action against Fulton for violation of SCDC policy was also a direct cause of Plaintiff being assaulted.

For their part, the Defendants Fulton and Sharp both attest in their affidavits that they were unaware of any specific threats made to the Plaintiff by other inmates, and that Plaintiff had never requested protective custody. However, although Defendants argue in their brief that Plaintiff has presented no evidence of any threat from another inmate which authorities failed to act on, and resulting in harm to him, considered in the light most favorable to the Plaintiff the evidence is sufficient to create an issue of fact as to whether Fulton had knowledge of a specific threat made to the Plaintiff by Cannon and failed to act on that threat, following which Plaintiff was in fact then assaulted by Cannon shortly thereafter. See Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)[When considering whether summary judgment for the Defendant is appropriate, the Court must assume that the Plaintiff's version of the facts is true]. For purposes of summary judgment the Court must assume Plaintiff's version (as well as those of Plaintiff's witnesses) to be correct; i.e., that Fulton knew of a direct threat made to the Plaintiff by Cannon and took no corrective action, with the result that Plaintiff was assaulted by Cannon and suffered serious injuries. Cf. Farmer, 511 U.S. at 837 [Deliberate indifference can be shown where "the official [was] both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists and [draws] the inference "]; cf.



Parrish v. ex rel. Lee v. Clevand, 372 F.3d 294, 302-303 (4th Cir. 2004) [Situation must be evaluated from the perspective of how the officer would have reasonably perceived it]; see also Pruitt, 2003 WL 23851094 at * 9 [Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states a constitutional claim]; Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety]. Therefore, the Defendant Fulton is not entitled to summary judgment on this claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)["Credibility determinations, the weighing of evidence, and drawing of legitimate inferences from the facts" are functions for the trier of fact]; Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'"].

However, while Plaintiff also has submitted sworn testimony that Sharp is the one he had given the information to about Cannon, and that this supposedly confidential information was then made public, which was the cause of Cannon's assault on him, Plaintiff has provided no evidence to show that Sharp leaked any information about him, was aware that any information had leaked out, or had been told or was otherwise aware of the threat Cannon had made against Plaintiff on July 11, 2012. Plaintiff's conclusory and unsupported speculation that Sharp was the one who may have leaked information about him is not sufficient to avoid summary judgment as to Sharp on this claim. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need



not assume the truth of legal conclusions couched as factual allegations].  Plaintiff has also provided no evidence whatsoever to connect the Defendants Knowlin, Adger or Bowers to any of these events. Horton, 925 F.Supp. at 540 ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].  Nor does this claim establish any ground for the issuance of injunctive relief such as to implicate the Defendant Byars in his official capacity.  Cf. Moore v. Boeker, No. 12-51, 2013 WL 3490667 at * 5 n. 4 (M.D.La. July 9, 2013) [Plaintiff has made no showing of likelihood that he will be wronged again in a similar manner.].  Therefore, these individuals are all entitled to dismissal as party Defendants under this claim.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants Byers, Adger and Bowers be **granted** summary judgment, in toto, and that these Defendants be **dismissed** as party Defendants in this case.  It is further recommended that the Defendant Fulton be **granted** summary judgment and **dismissed** as a party Defendant under Plaintiff's access to court claims, but that the Defendants Knowlin and Sharp's motion for summary judgment be **denied** with respect to this claim. Finally, it is recommended that the Defendants Knowlin and Sharp be **granted** summary judgment and **dismissed** as party Defendants under Plaintiff's conditions of confinement claim, but that the Defendant Fulton's motion for summary judgment be **denied** as to that claim.

If the Court adopts this recommendation, the only claims and Defendants remaining in this lawsuit will be Plaintiff's access to court claim against the Defendants Knowlin and Sharp,



18

and Plaintiff's conditions of confinement (failure to protect) claim against the Defendant Fulton. All other Defendants, as well as Plaintiff's claim for injunctive relief, will be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 28, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

