**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Michael J. Ferola, #291941, | ) | CIVIL ACTION NO. 9:13-2413-RBH-BM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **SUPPLEMENTAL** |
| | ) | **REPORT AND RECOMMENDATION** |
| Officer Fulton, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C.§ 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendant. Plaintiff is now represented by appointed counsel.

All of the originally named Defendants filed a motion for summary judgment on June 6, 2014, which resulted in the entry of a Report and Recommendation on August 28, 2014[1] recommending that the originally named Defendants Byers, Adger and Bowers be granted summary judgment, in toto, and that those Defendants be dismissed as party Defendants in the case; that the Defendant Fulton be granted summary judgment and dismissed as a party Defendant under Plaintiff's access to court claim, but that the originally named Defendants Knowlin and Sharp's motion for

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. As the Defendants' motion for summary judgment was dispositive, a Report and Recommendation was entered for review by the Court.





summary judgment be denied with respect to that claim; and that the Defendants Knowlin and Sharp be granted summary judgment and dismissed as party Defendants under Plaintiff's conditions of confinement claim, while the Defendant Fulton's motion for summary judgment be denied as to that claim. In an order filed March 3, 2015, the District Judge adopted the Report and Recommendation, in part, with the added ruling that the Defendants Knowlin and Sharp were entitled to summary judgment with respect to Plaintiff's access to court claim. As a result of that ruling, the only claim remaining to be litigated in this case is Plaintiff's condition of confinement claim against the Defendant Fulton.

Following entry of the District Court's Order and appointment of counsel for the Plaintiff, an additional time for discovery was allowed, following which a second motion for summary judgment was filed by the Defendant Fulton. Plaintiff filed a response in opposition to this motion on February 22, 2016, and the case was then referred back to the undersigned for consideration of this motion. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).





**Background and Evidence**

For purposes of this supplemental Report and Recommendation, the undersigned incorporates relevant portions of the "Background and Evidence" section of the previously issued Report and Recommendation, as follows:

> Plaintiff . . . alleges [in his verified Complaint][2] that on July 11, 2012, he and inmate Joseph Cannon got into a verbal altercation after Plaintiff had submitted information to the Associate Warden concerning Cannon's "illegal activities". Plaintiff alleges that Cannon, in the presence of Defendant Officer Fulton, threatened the Plaintiff ("I'll beat your ass"), but that Fulton took no corrective action. Plaintiff alleges that Fulton's failure to take corrective action against Cannon for threatening the Plaintiff was in violation of SCDC policy, and was a "direct result of Plaintiff being assaulted". Specifically, Plaintiff alleges that while he was speaking with Cannon's roommate, Cannon entered the room and "struck Plaintiff in the face knocking Plaintiff into the wall". Plaintiff further alleges that during the ensuing struggle, Cannon struck him multiple times until he [Plaintiff] fell to the floor unconscious. Plaintiff alleges that during this altercation Fulton was "maybe (50) feet away", but that even though he called for help while the assault was taking place, Fulton did not get up to investigate what was going on. Plaintiff alleges (on information and belief) that Fulton was on the phone at her desk during the approximate five minute assault, and that he had complained to the Defendants Bowers and Sharp in the past about Fulton making personal phone calls while working.
>
> Plaintiff also alleges that even though SCDC policy requires half hour security checks, Fulton "did none" and that he lay in his room from 11:00 a.m. until the 1:00 p.m. count. Plaintiff alleges that it was not until 1:00 p.m., when an inmate advised Fulton that Plaintiff was in his room and needed medical attention, that Bowers was summoned to the unit. Plaintiff thereafter was escorted to the medical unit, where he was found to have "facial contusions" and was diagnosed with a "head injury with concussion". Plaintiff alleges that he refused to tell investigators who assaulted him until he was removed from Turbeville, that he was placed in lockup by the Defendant Sharp pending an investigation and transfer, and that he was thereafter transferred to the Evans Correctional Institution on July 16, 2012, following which he identified Cannon as the inmate who had assaulted him.

---

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).





Plaintiff alleges that he had provided information about contraband and illegal activities at Turbeville to the Defendant Sharp (Associate Warden), which was released and was the direct cause of Plaintiff being assaulted. Plaintiff also alleges that the failure of the Defendants to keep Plaintiff's information confidential as promised was a contributing factor to Plaintiff being assaulted by Cannon.

*******

In support of summary judgment in the case, the Defendant Genesie Fulton . . . submitted an affidavit wherein she attests that she was an employee of the SCDC working at the Turbeville Correctional Institution at all times relevant to the allegations of Plaintiff's Complaint. Fulton attests that she is unaware of any specific threats made to the Plaintiff by other inmates, and that Plaintiff never requested protective custody. Fulton attests that on July 11, 2012, while making cell checks, she approached Plaintiff's cell and noticed his face was swollen and bruised as if he had been in a fight. Fulton attests that when she asked Plaintiff what had happened, he replied "nothing Ms. Fulton, I am ok". Fulton attests that she had previously led Plaintiff back into his cell at 12:35 p.m., and that his face was not bruised and swollen at that time. Fulton attests that she contacted Lt. Bowers, and Plaintiff was escorted to medical. Fulton attests that she believes the injury occurred when the inmates were returning from lunch to their rooms, and that it is her understanding that Plaintiff was seen by the medical department and sent by ambulance to the hospital, where he was examined and released. See generally, Fulton Affidavit.

The [former] Defendant Kenneth Sharp . . . also submitted an affidavit wherein he attests that he was employed by the SCDC at all relevant times, that at no time was he ever informed of any specific threat against the Plaintiff from any other inmate, nor did Plaintiff ever request to be placed into protective custody, that he has no information regarding the attack on the Plaintiff on July 11, 2012 nor its aftermath, as this matter was handled by other officers, and that he knows of no evidence of any dereliction of duty by Officer Fulton. See generally, Sharp Affidavit.

*******

The Defendants . . . also provided copies of the SCDC Offender Management System printouts for the Plaintiff with respect to the incident of July 11, 2012, which reflect that this incident involved an inmate on inmate assault without weapon and resulted in "minor" injuries. The narrative report on the management system printout reflects that Plaintiff was discovered by Officer Fulton while she was performing her duties on the B-wing, and that when Fulton noticed Plaintiff's face was swollen and bruised and inquired what happened, Plaintiff stated "nothing and he was ok". The computer narrative further indicates that Plaintiff was escorted to medical by the Defendant





> Bowers, where he was examined by Dr. Paul Drago. Dr. Drago requested treatment by an outside facility, and Plaintiff was transported by EMS to the regional hospital, where he was examined and found to have sustained a "minor head injury and a concussion". The narrative further indicates that Plaintiff was thereafter returned to Turbeville and placed in the SMU due to "protective concerns", while B-wing was placed on lock down until further notice. See generally, Defendants' Exhibits.
>
> In opposition to the Defendants' motion for summary judgment, . . . Plaintiff . . . provided affidavits from other inmates relating to the incident of July 11, 2012, when he was assaulted by Cannon. Plaintiff's Exhibits D and E. Inmate Gary Wirtz attests that he was a prisoner housed in the B-unit on that date, and that he observed Plaintiff and inmate Joseph Cannon in a verbal argument at Officer Fulton's desk where he heard Cannon threaten to "beat [Plaintiff's] ass" for calling him [Cannon] a snitch. Wirtz attests that this occurred in the presence of Officer Fulton, who was at her desk, and that approximately two hours later the unit was ordered to lock down when Plaintiff was assaulted. See generally, Wirtz Affidavit. Inmate Chris Jones has also submitted an affidavit wherein he relays these same facts, and that when Cannon made his threat to the Plaintiff, Fulton "made no attempt to intervene or separate said inmates". See generally, Jones Affidavit.
>
> Plaintiff . . . also provided a copy of an SCDC Health Services Report wherein Plaintiff was referred to the hospital by Dr. Drago for a "head injury with concussion". See Plaintiff's Exhibit F. Plaintiff . . . also submitted copies of SCDC Health Services Medical Summaries for July 11, 2012, showing where Plaintiff was seen for an "assault". These summaries reflect that Plaintiff had "edema all over face left worse than right" as well as a left side hemorrhage and a nose injury, with a notation that he needed to be sent to the ER for a CT scan. The medical summaries further note that on Plaintiff's return from the hospital, he had been diagnosed with a head injury with concussion and facial contusions. See Plaintiff's Exhibit H.
>
> Finally, Plaintiff . . . submitted a "voluntary statement" from inmate Chris Thornton, wherein he states that he saw Plaintiff come out of his room around noon time, following which several inmates went into Plaintiff's room and then subsequently came out of his room. See Plaintiff's Exhibit I.

See Report and Recommendation of August 28, 2014, at pp. 3-9.

In support of the new motion for summary judgment, Fulton has submitted a copy of Plaintiff's deposition (which had not been taken at the time of the filing of the original motion for summary judgment). Fulton points to a portion of Plaintiff's deposition where Plaintiff testified that





at the time of the verbal altercation between Plaintiff and Inmate Cannon, Fulton was seated at the officer's desk on the phone. Plaintiff was asked "do you know if she heard what happened?", and Plaintiff responded "no, I don't know for sure". Plaintiff's Deposition, p. 15. Plaintiff further testified that, immediately after the verbal altercation, he did not immediately approach Fulton and tell her what happened but instead went back to his room. Id. The following colloquy took place:

> Question: So you did not tell Officer Fulton immediately after the verbal altercation happened that Cannon had threatened you.
>
> Answer: No, she was standing right there. She heard the threat, she turned and did this. She looked - - when he threatened me and said he was going to beat my ass, she turned her head like this and then turned back to the conversation on the telephone.
>
> Question: Okay. But you don't know for sure if she heard what he said or if she just heard a commotion, do you?
>
> Answer: Well, I mean, I can't say that she actually heard it. But in my opinion, she turned her head and observed what was going on. So my answer to that would be, yes, she did hear it.

Id., p. 16.

Plaintiff then testified that shortly thereafter Cannon's roommate called him into his room, and as Plaintiff was explaining to him what was going on, Cannon entered the room and hit him, knocking him against the wall. Id., p. 17. Plaintiff testified that "the beating lasted for maybe five minutes. I am yelling out for them to do something, and I am calling Officer Fulton's name". Id., p. 20.[3] Plaintiff testified that because of all the commotion and Plaintiff yelling "CO", some inmates shut the door and stood outside the door. Id., p. 21. Plaintiff testified that the cell door was closed by these inmates about a minute and a half to two minutes into the five minute fight. Plaintiff

[3]Plaintiff testified that he actually yelled out "Officer, officer. Actually, CO [corrections officer] is what I said". Id., p. 20.





testified that finally, when he was on the floor unconscious, Cannon's roommate said "He's had enough. Let him alone". Id., p. 23. Plaintiff testified that he is not sure how long he was unconscious, but that when he came to he was able to get up and get out of the cell. Plaintiff testified that he was bleeding from his face, nose, and mouth, and that when he walked out past the officer's desk, he does not believe that Fulton was there. Id., pp. 24-25. When asked if he made an attempt at that time to find Officer Fulton, Plaintiff testified that he did not, that he instead went to his room to "clean up". Id., p. 25. Plaintiff testified that approximately twenty minutes later, Officer Fulton came to his door and called first responders. Id., p. 28.

In opposition to the Defendant's motion, Plaintiff has submitted an affidavit in which he attests that during his time of residence at the Turbeville Correctional Institution, he submitted at least four grievances against the Defendant Fulton, one of which was on March 20, 2012. Plaintiff attests that in that grievance he complained that Officer Fulton had caused an inmate to threaten him because he had told Officer Fulton's supervisor that Officer Fulton was always on the telephone and was not doing her job. Plaintiff attests that the inmate threatened him to drop the complaints he had with Officer Fulton. Plaintiff further attests that on the morning of July 11, 2012, he was threatened by Inmate Joseph Cannon because he thought Plaintiff was a snitch, and that at the time he was threatened, Officer Fulton was at her desk approximately a foot away from where he and Cannon were standing. Plaintiff attests that Fulton was on the telephone at the time, but that immediately after the threat was made, he observed Fulton turn her head toward Cannon and him. Plaintiff attests that he did not seek protection from Officer Fulton, but that to his knowledge, there is a Department of Corrections policy requiring immediate corrective action when a threat is made, and that Fulton





did not take any corrective action. Plaintiff further attests that when Cannon attacked him in the cell, Officer Fulton was sitting at her desk twenty to twenty-five feet away from the cell. Plaintiff attests that there was no television noise at the time because the audio for the televisions can only be heard through headsets. Finally, Plaintiff attests that after this event he requested protection and was placed in lock up at Turbeville until his transfer to another facility. See generally, Plaintiff's Affidavit.

Plaintiff has also submitted a copy of SCDC Policies/Procedure OP-22.14, which provides in relevant part that when an SCDC employee witnesses or has knowledge of any act by an inmate which is a violation of the rules and regulations of the SCDC, the employee will attempt to correct the behavior immediately. See Section 2.1. If the event cannot be corrected in this manner, the policy then provides for additional steps to be taken. This policy further provides, in Offense Code 809, that any verbal or written communication by an inmate to an individual that he intends to injure that person or commit a violent or unlawful act, presently or in the future, or one who commits a physical act of a threatening nature, commits a violation of the policy. See also Offense Code 824 [Threatening to inflict harm, physical or otherwise/assault on another inmate].

Plaintiff has also submitted excerpts from Fulton's deposition, in which Fulton testified that she did not observe Cannon threaten the Plaintiff. Even so, when asked if she agreed that if she did observe Cannon threaten the Plaintiff, that she would have to take corrective action, Fulton testified "Yes, sir". Finally, Plaintiff was also provided a copy of the Incident Report filled out by Fulton with respect to this incident (detailing where Fulton says she found Plaintiff in his cell with a swollen and bruised face), as well as some copies of Defendant's discovery responses. See Exhibits.





**Discussion**

As an employee of the State of South Carolina, Fulton is subject to suit for damages under § 1983 in her individual capacity. As was noted in the previous Report and Recommendation, in order for the Defendant to be liable for a violation of Plaintiff's constitutional rights, Plaintiff must have evidence sufficient to give rise to a genuine issue of fact as to whether the Defendant was deliberately indifferent to a specific known risk of harm to the Plaintiff. See Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. Jul. 7, 2003)[Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety]. Pursuant to this standard, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw the inference". Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Supreme Court has held that a plaintiff can establish a prima facie case of deliberate indifference by showing that "the circumstances suggest that the Defendant - - official being sued [was] exposed to information concerning the risk [of serious harm] and thus 'must have known' about it". Farmer, 511 U.S. at 842. As was noted in the previous Report and Recommendation, Plaintiff attests in his verified Complaint that he had submitted information to the Associate Warden at the Turbeville Correctional Institution about allegedly illegal activities being engaged in by Inmate Cannon, and that subsequently on July 11, 2012 Cannon, in the presence of the





Defendant Fulton, threatened the Plaintiff and stated that was going to "beat [his] ass". Plaintiff has also submitted affidavits from several fellow inmates to confirm that Cannon threatened the Plaintiff in Fulton's presence, but that Fulton took no corrective action. Plaintiff alleges that shortly thereafter he was then assaulted by Cannon in his cell, suffering serious injuries as a result. Plaintiff alleges that Fulton was the Officer on duty at the time, "was maybe (50) feet away", but that not withstanding the altercation taking place and (according to the Plaintiff) Plaintiff calling for help while the assault took place, Fulton never got up to investigate the numerous inmates gathering outside of his cell during the assault, or the noise being made. Plaintiff alleges that the assault lasted approximately five minutes, during which Plaintiff believed Fulton was on the phone on a personal call.[4]

In the previous Report and Recommendation, the undersigned concluded that the evidence, considered in the light most favorable to the Plaintiff, was sufficient to create an issue of fact as to whether Fulton had knowledge of a specific threat made to the Plaintiff by Cannon and failed to act on that threat, following which Plaintiff was in fact assaulted by Cannon shortly thereafter. See Report and Recommendation filed August 28, 2014, p. 16; see also Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)[When considering whether summary judgment for the Defendant is appropriate, the Court must assume that the Plaintiff's version of the facts is true]. Nothing in the new evidence submitted by the parties to the Court in conjunction with Fulton's new motion for summary judgment changes this finding. Plaintiff's deposition testimony is consistent with the evidence already considered, as Plaintiff testified that when he was threatened by Cannon, Fulton "was standing right there. She heard the threat", even turning her head before going back to her

---

[4]Plaintiff also alleged that he has complained in the past to former Defendants Bowers and Sharpe about Fulton making personal calls while at work.





conversation on the telephone. Plaintiff's Deposition, p. 16. Plaintiff makes the same point again in his new affidavit. See Plaintiff's Affidavit, ¶ ¶ 7 and 8.

The fact that Plaintiff cannot personally testify as to what another person (in this case, Fulton) heard is not a basis for summary judgment in light of the substantial evidence submitted by the Plaintiff (including affidavits from other inmates) that Fulton was "right there" and even turned her head when Cannon threatened to physically assault the Plaintiff. Cf. Weatherholt v. Bradley, 316 F.Appx. 300, 302 (4th Cir. 2009) ["Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the ususal ways, including inference from circumstantial evidence"], quoting Farmer, 511 U.S. at 842; see also Farmer, 511 U.S. at 837 [Deliberate indifference can be shown where "the official [was] both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists and [draws] the inference "]; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)["Credibility determinations, the weighing of evidence, and drawing of legitimate inferences from the facts" are functions for the trier of fact]. While Fulton disputes Plaintiff's version of events, for purposes of summary judgment the Court must consider the facts, and all inferences properly drawn therefrom, in the light most favorable to the Plaintiff. Gray, 925 F.2d at 95 [When considering whether summary judgment for the Defendant is appropriate, the Court must assume that the Plaintiff's version of the facts is true]; Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'"].





Therefore, Fulton is not entitled to summary judgment in this case.

**Conclusion**

Based on the foregoing, it remains the recommendation of the undersigned that the Defendant Fulton's motion for summary judgment on this claim be **denied**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

March 16, 2016
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



